DSS:CAC
F#: 2009R01004

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M-11-500**

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

SHANE BROWNE, CASSANDRA CEAN,
BIBI OMAR, also known as
"Zameena Omar," and
KIM RAMLOCHAN,
also known as "Kim Yohay" and
"Kim Cupeles,"

   Defendants.

- - - - - - - - - - - - - - - - - - X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANTS

(T. 18, U.S.C., § 1349)

EASTERN DISTRICT OF NEW YORK, SS:

  PATRICIA TARASCA, being duly sworn, deposes and says that she is a Special Agent with the Federal Deposit Insurance Corporation ("FDIC"), duly appointed according to law and acting as such.

  In or about and between September 2005 and July 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHANE BROWNE, CASSANDRA CEAN, BIBI OMAR, also known as "Zameena Omar," and KIM RAMLOCHAN, also known as "Kim Yohay" and "Kim Cupeles," together with others, did knowingly and intentionally conspire (1) to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses,

representations and promises, and transmit and cause to be transmitted by means of wire in interstate commerce, for the purpose of executing such scheme or artifice, writings, signs, signals, pictures and sounds, and (2) to execute a scheme and artifice to defraud financial institutions and to obtain money, funds and credits owned by and under the custody and control of such financial institutions by means of materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Sections 1343 and 1344.

(Title 18, United States Code, Section 1349)

The source of my information and grounds for my beliefs are as follows:

1. I have been a Special Agent with the FDIC for approximately 1 year, during which time I have investigated violations affecting financial institutions and other financial crimes. In this position, I have conducted physical surveillance, interviewed witnesses, reviewed extensive documents obtained through the service of subpoenas, and used other investigative techniques to secure relevant information for use in criminal prosecutions. Prior to that, I was a Special Agent with the Federal Bureau of Investigation for approximately 6 years.

2. My knowledge of the information set forth in this

affidavit is based upon my personal participation in this investigation and in numerous other investigations of fraud perpetrated against financial institutions and lenders, including wire fraud and bank fraud, my review of records and reports, my discussions with witnesses and victims, my conversations with other law enforcement agents involved in this investigation and similar investigations, my conversations with and review of information provided by financial institutions and my law enforcement experience and training, among other things.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support the issuance of arrest warrants, it does not include all of the facts I have learned during the course of this investigation. Where actions, conversations and statements of others are reported in this affidavit, they are reported in substance and in part unless otherwise indicated.

## Background

4. American Brokers Conduit ("ABC") and WMC Mortgage Corp. ("WMC"), a subsidiary of GE Money Bank are mortgage lenders. GE Money Bank is a federally chartered bank, the deposits of which were insured by the Federal Deposit Insurance Corporation. Mortgage brokers submit loan applications on behalf of prospective borrowers to mortgage lenders like ABC and WMC. The mortgage lenders then assess the likelihood that a borrower

3

will repay the loan based on information in the loan applications and lend money in cases where they believe the borrower will repay. If approved by the mortgage lender, the lender typically wires the proceeds of each loan to an account controlled by the closing attorney. At the closing, the closing attorney writes a series of checks to properly disburse these funds. These checks must be disbursed in accordance with the HUD-1 Settlement Statement (the "HUD-1"). ABC's loan closing instructions specifically provide that, "A HUD-1 Settlement Statement reflecting the fees owed and paid to date is included with the loan documents provided. **DO NOT UNDER ANY CIRCUMSTANCES CHANGE THE AMOUNTS SET FORTH ON THE HUD-1 PROVIDED WITHOUT LENDER APPROVAL.** Any unauthorized changes to the HUD-1, or to the fees being charged by Lender or Lender's correspondent, will result in a claim by Lender against the Settlement Agent." Similarly, WMC's loan closing instructions specifically provide that, "!!! **ABSOLUTELY NO CHANGES TO FEES (DO NOT MOVE FROM BORROWER TO SELLER OR SELLER TO BORROWER. DO NOT ADD FEES, DO NOT DELETE FEES, DO NOT CHANGE THE AMOUNT OF FEES IN ANYWAY), DOCUMENTS, INSTRUCTIONS OR CONDITIONS UNLESS IN WRITING FROM WMC MORTGAGE CORP. CLOSING DEPARTMENT. NO OTHER PERSON, OFFICE OR DEPARTMENT HAS AUTHORITY TO MAKE ANY CHANGES!!!**" The HUD-1 allows, however, the payment of cash to the seller to be disbursed according to

the seller's preference, which is the only manner in which someone not listed on the HUD-1 may obtain payment.

5. A "straw buyer," in this case, is someone who participates in a real estate purchase transaction as a buyer, despite having no intention of living in the property, making mortgage payments on the loan used to purchase the property, or otherwise assuming the responsibilities of ownership of that property. Mortgage applications for straw buyers frequently contain misrepresentations, including misrepresentations concerning the buyer's income, assets, the origin of funds for down payments, and whether the buyer intends to occupy the property as his or her primary residence. As part of that application, a buyer must often provide a verification of rent to demonstrate to the lender that the buyer currently pays his/her monthly rent. The verification of rent for straw buyers typically contains inflated rental amounts.

**The Fraudulent Scheme**

A. 55 Stillwell Place

6. The defendant SHANE BROWNE was the owner of 55 Stillwell Place in Brooklyn, New York ("Subject Property 1"). In or about 2005, SHANE BROWNE recruited a straw buyer ("STRAW BUYER 1") to purchase Subject Property 1. BROWNE told STRAW BUYER 1 that BROWNE was behind on his mortgage payments and convinced STRAW BUYER 1 to purchase Subject Property 1 in exchange for

5

$10,000 so that BROWNE would not lose Subject Property 1. On or about September 22, 2005, BROWNE sold Subject Property 1 to STRAW BUYER 1 for $555,000, and STRAW BUYER 1 obtained a mortgage in the amount of $499,500 from the mortgage lender. The defendant SHANE BROWNE had told STRAW BUYER 1 that he would pay the monthly mortgage payments. But after SHANE BROWNE continually failed to make the monthly mortgage payments, STRAW BUYER 1 demanded that the Subject Property 1 be sold.

7. In early 2006, defendant BIBI OMAR, also known as "Zameena Omar," recruited STRAW BUYER 2 to purchase Subject Property 1 in exchange for $10,000. The defendant BIBI OMAR was STRAW BUYER 2's landlord and told STRAW BUYER 2 that BIBI OMAR's friend, defendant SHANE BROWNE, could help STRAW BUYER 2 make some money by buying a house in STRAW BUYER 2's name. Defendant BIBI OMAR further explained that the mortgage on the house would be taken out of STRAW BUYER 2'S name after three months. The house was Subject Property 1, in which the defendant SHANE BROWNE resided.

8. After STRAW BUYER 2 agreed to defendant BIBI OMAR'S proposal, OMAR brought STRAW BUYER 2 to defendant KIM RAMLOCHAN's office. Defendant KIM RAMLOCHAN, also known as "Kim Yohay" and "Kim Cupeles, was a loan officer for mortgage broker Imperial Mortgage Corp. ("Imperial"). As a loan officer, defendant KIM RAMLOCHAN was responsible for completing the loan

6

application, which requires financial details about the borrower. Defendant RAMLOCHAN provided the same explanation to STRAW BUYER 2 as defendant BIBI OMAR had provided, including the fact that the mortgage would only remain in STRAW BUYER 2's name for three months. The defendant RAMLOCHAN further advised that STRAW BUYER 2 would be paid $10,000 for the transaction. During this meeting, the defendant SHANE BROWNE arrived and told STRAW BUYER 2 that he was behind on his mortgage payments. The defendant BROWNE offered that if STRAW BUYER 2 purchased the property, he would pay the mortgage on his/her behalf for three months, at which time it would be taken out of her name. Defendant SHANE BROWNE did not tell STRAW BUYER 2 that Subject Property 1 was owned by STRAW BUYER 1 at that time.

9. STRAW BUYER 2 agreed to purchase Subject Property 1. STRAW BUYER 2 never provided defendant RAMLOCHAN with bank statements, proof of income or employment information -- all required to be entered into a loan application to be submitted to the mortgage lender.

10. The loan application for STRAW BUYER 2's purchase, which was signed by defendant KIM RAMLOCHAN, contained material misstatements. First, the loan application inaccurately stated that STRAW BUYER 2 was going to use Subject Property 1 as a primary residence, which STRAW BUYER 2 never said to defendants OMAR, RAMLOCHAN or BROWNE. Second, the loan application

7

inaccurately stated that STRAW BUYER 2 was employed by MSC Solutions, when STRAW BUYER 2 was employed as a babysitter and had never heard of the company MSC Solutions. Third, the loan application inaccurately stated that STRAW BUYER 2 had a monthly income of $14,795, when STRAW BUYER 2's actual monthly income was approximately $1,000. Fourth, STRAW BUYER 2's bank accounts were grossly inflated. Finally, the loan application inaccurately stated that STRAW BUYER 2 provided a down payment of $15,000, when STRAW BUYER 2 did not provide any down payment.

11. STRAW BUYER 2's verification of rent, which was also required for the loan, inaccurately stated that STRAW BUYER 2's rental payments at the time were $1,500 per month, when they were actually $550 per month. STRAW BUYER 2 never provided rental payment information. The verification of rent document was signed by STRAW BUYER 2's landlord, defendant BIBI OMAR in the name "Zameena Omar."

12. The closing of the sale of Subject Property 1 from STRAW BUYER 1 to STRAW BUYER 2 took place on or about May 11, 2006 at the law office of defendant CASSANDRA CEAN who is an attorney. Defendants SHANE BROWNE and CASSANDRA CEAN, among others, were present at the closing. The lender, ABC, made wire payments totaling $756,973.53 on May 11 and May 17, 2006 to fund the loan to an Interest On Lawyer's Account ("IOLA"), which was controlled by the defendant CASSANDRA CEAN.

8

13. The loan proceeds were not disbursed by the defendant CASSANDRA CEAN in accordance with the HUD-1. For example, several payments totaling $125,193.97 were made directly to the defendant SHANE BROWNE, who was not a party to the transaction. In addition, unauthorized payments were made directly to defendants BIBI OMAR, KIM RAMLOCHAN and CASSANDRA CEAN, as well as to the defendant CASSANDRA CEAN's paralegal. In addition, an unauthorized payment was made to the individual who signed STRAW BUYER 2'S false verification of employment. None of these payments were authorized by the seller (STRAW BUYER 1). STRAW BUYER 2 was never paid the $10,000 promised by defendants RAMLOCHAN and BROWNE.

14. On May 11, 2006, a $65,000 withdrawal was made from the IOLA account controlled by the defendant CASSANDRA CEAN. A cashier's check in that same amount was provided to the lender as part of the closing with the remitter as STRAW BUYER 2 and the payee as STRAW BUYER 1 to demonstrate to the lender that a down payment was made. The $65,000, however, was never paid to STRAW BUYER 1 and STRAW BUYER 2 never made a down payment. Instead the cashier's check was deposited back into defendant CASSANDRA CEAN's IOLA account on May 17, 2006.

15. Subject Property 1 has been foreclosed upon by the lender, ABC, and a judgment was issued against STRAW BUYER 2 for approximately $668,863.83 plus costs and interests.

### B.  742 New Jersey Avenue

16. In the spring of 2006, the defendant SHANE BROWNE offered the three owners (the "Owners") of 742 New Jersey Avenue in Brooklyn, New York ("Subject Property 2") an opportunity to help them save Subject Property 2, which was going into foreclosure. Thereafter, the Owners of Subject Property 2 attended a meeting with the defendant BROWNE where BROWNE explained that he would take over responsibility for the property and help them make their mortgage payments. The defendant BROWNE also stated that the Owners should find someone with good credit who could buy the property back from defendant BROWNE in a few months. The Owners then signed a power of attorney to the defendant SHANE BROWNE and were each given checks in the amount of $3,333, which they were told by the defendant BROWNE were provided to them as "thank you gifts." These "gift" checks were written from the defendant CASSANDRA CEAN's IOLA account.

17. Shortly after STRAW BUYER 2 purchased Subject Property 1, the defendant SHANE BROWNE asked STRAW BUYER 2 to assist him again by purchasing Subject Property 2. STRAW BUYER 2 agreed to purchase Subject Property 2.

18. Thereafter, the defendants BIBI OMAR and KIM RAMLOCHEN visited STRAW BUYER 2 while STRAW BUYER 2 was at work babysitting. The purpose of the visit was to obtain STRAW BUYER 2's signature on several documents for the purchase of Subject

10

Property 2. No questions were asked about STRAW BUYER 2's income, bank account statements or employment.

19. The loan application for STRAW BUYER 2's purchase of Subject Property 2 was signed by defendant KIM RAMLOCHAN's husband, Joshua Yohay, who STRAW BUYER 2 never spoke to. That application contained material misstatements. First, the loan application inaccurately stated that STRAW BUYER 2 was going to use Subject Property 2 as a primary residence, which STRAW BUYER 2 never said to defendants OMAR, RAMLOHCAN or BROWNE. Second, the loan application inaccurately stated that STRAW BUYER 2 was employed by MSC Solutions, when STRAW BUYER 2 was employed as a babysitter and had never heard of the company MSC Solutions. Third, the loan application inaccurately stated that STRAW BUYER 2 had a monthly income of $7,575, when STRAW BUYER 2's actual monthly income was approximately $1,000. Fourth, STRAW BUYER 2's bank accounts were grossly inflated. Finally, the loan application inaccurately stated that STRAW BUYER 2 provide a down payment of $10,000, when STRAW BUYER 2 provided no down payment.

20. The closing of the sale of Subject Property 2 from the Owners, through the defendant SHANE BROWNE as "attorney in fact," to STRAW BUYER 2 took place on or about June 30, 2006 at the law office of defendant CASSANDRA CEAN. Defendants SHANE BROWNE and CASSANDRA CEAN, among others, were present at the closing. The lender WMC made wire payments on June 29, 2006

totaling $550,331.98 to the defendant CASSANDRA CEAN's IOLA account to fund the loan. The loan proceeds were not disbursed by the defendant CASSANDRA CEAN in accordance with the HUD-1. For example, several payments totaling $201,785.51 were made directly to the defendant SHANE BROWNE. Although the defendant SHANE BROWNE had power of attorney, the Owners did not authorize him to receive the money. In addition, the Owners were never paid any money for the sale of Subject Property 2, notwithstanding the fact that they were each given $3,330 as a "gift" prior to the sale. Furthermore, unauthorized payments were made directly to defendants BIBI OMAR, KIM RAMLOCHAN and CASSANDRA CEAN. None of these payments were authorized by the Owners.

21. Subject Property 2 has been foreclosed upon by the lender, WMC, and a judgment was issued against STRAW BUYER 2 for approximately $456,766.16 plus costs and interest.

C. **1144 East 82nd Street**

22. In or about April 2006, the defendant SHANE BROWNE approached a homeowner (the "Homeowner") about the sale of 1144 East 82nd Street in Brooklyn, New York ("Subject Property 3"). The Homeowner had been having problems with Subject Property 3 and accepted the defendant SHANE BROWNE's offer to help him/her sell the house. The defendant SHANE BROWNE recruited a straw buyer ("STRAW BUYER 3") to buy Subject Property 3.

23. The mortgage lender for the purchase of Subject Property 3 was ABC and the defendant KIM RAMLOCHAN was the loan officer. The loan application for STRAW BUYER 3's purchase, which was signed by defendant KIM RAMLOCHAN, contained material misstatements, including (1) that STRAW BUYER 3 was going to use Subject Property 3 as a primary residence when STRAW BUYER 3 had no intention of living at Subject Property 3, and (2) that defendant SHANE BROWNE was STRAW BUYER 3's landlord when he was not. The defendant SHANE BROWNE signed the verification of rent form, which contained false information.

24. The closing of the sale of Subject Property 3 from the Homeowner to STRAW BUYER 3 took place on or about June 23, 2006 at the law office of defendant CASSANDRA CEAN. Defendants SHANE BROWNE and CASSANDRA CEAN, among others, were present at the closing. On that same day, the lender, ABC, made two wire payments to the defendant CASSANDRA CEAN's IOLA account totaling $463,178.08 to fund the loan.

25. The loan proceeds were not disbursed by the defendant CASSANDRA CEAN in accordance with the HUD-1. For example, several payments totaling $116,911.46 were made directly to the defendant SHANE BROWNE, who was not a party to the transaction. In addition, the defendant CASSANDRA CEAN received a payment over that which was authorized by the HUD-1.

26. Subject Property 2 is currently in default and foreclosure proceedings have been initiated by the lender, ABC.

WHEREFORE, I respectfully request that arrest warrants be issued so that the defendants SHANE BROWNE, CASSANDRA CEAN, BIBI OMAR, also known as "Zameena Omar," and KIM RAMLOCHAN, also known as "Kim Yohay" and "Kim Cupeles," be dealt with according to law.

                                              Patricia Tarasca
                                              Special Agent
                                              Federal Deposit Insurance Corporation

Sworn to before me this
12 day of May, 2011

_____
THE HON. CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK